## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NURALI OCHILOV, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    Case No. CIV-26-526-R |
| | ) |
| DR. SCARLET GRANT, et al., | ) |
| | ) |
| Respondents.[1] | ) |

### <u>REPORT AND RECOMMENDATION</u>

Petitioner Nurali Ochilov, a noncitizen,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District Judge David L. Russell referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, Doc. 13, and Petitioner replied, Doc. 14. So the matter is at issue.

---

[1]    Respondent Warden Scarlet Grant is not a federal official, and the response is not filed on her behalf. *See* Doc. 13, at 2.

[2]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition and order Respondents to immediately release Petitioner.

## I.    Factual background and Petitioner's claim.

Petitioner is a citizen of Uzbekistan. Doc. 1, at 2. The Department of Homeland Security (DHS) placed him into removal proceedings on May 8, 2023 by issuing a Notice to Appear (NTA) charging him as removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA).[4] *Id.* (citing Ex. 1). DHS presumably released him. On March 11, 2026, Immigration and Customs Enforcement (ICE) took him into custody. *Id.* Petitioner has no criminal history. *Id.*

Petitioner maintains that his continued detention is a violation of the Due Process Clause of the Fifth Amendment. *Id.* at 9-15. He seeks a declaration that his continued detention is unlawful, and asks the Court to order his immediate release or, in the alterative, order Respondents to provide a prompt

---

[4]    This section is codified in the United States Code as 8 U.S.C. § 1182(a)(7)(A)(i)(I). Section 1182(a)(7)(A)(i)(I) provides that any immigrant, who at the time of application for admission, was not in possession of (1) a valid unexpired entry document as required by the INA, and (2) a valid travel document/document of identity and nationality as required by regulations is inadmissible.

individualized custody hearing before a neutral decisionmaker at which the Government must prove by clear and convicting evidence that he is a danger or flight risk; and order his immediate release if no hearing is provided. *Id.* at 18.

## II.   Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III.   Discussion.

### A.   Petitioner has a right to procedural due process.

Petitioner claims that his ongoing detention without a pre-deprivation hearing before a neutral decisionmaker violated his rights under the Due Process Clause of the Fifth Amendment. Doc. 1, at 9-15. To the extent that Respondents substantively address Petitioner's due process argument, they

3

assert that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b) of the INA and therefore categorically ineligible for a bond hearing. Doc. 13, at 4-12.

Here, there is some ambiguity as to the authority under which Petitioner was released on parole. If Petitioner was released on his own recognizance, that would indicate release on conditional parole under 8 U.S.C. § 1226(a). *See Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)"). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citations omitted). Respondents, on the other hand, would likely argue that he was released on temporary parole under 8 U.S.C. § 1182(d)(5). Parole under § 1182(d)(5)(A) is limited to "urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citations omitted). Neither party provides copies of Petitioner's release documents. However, it is unnecessary for the undersigned to determine which statute Petitioner was paroled under because, as outlined below, regardless of the statute he was paroled under, Petitioner was entitled to a pre-deprivation bond hearing prior to being detained.

"Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *Omer G.G. v. Kaiser*, 815 F.Supp.3d 1098, 1108 (E.D. Cal. Nov. 22, 2025) (citing *Young v. Harper*, 520 U.S. 143, 147-49 (1997)); *cf. Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty. Accordingly . . . a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in [*Morrissey v. Brewer*, 408 U.S. 471, 484 (1972)]"). By initially releasing Petitioner on parole, the Government necessarily determined that he was "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b), and there is no evidence that there was a change in this assessment. By permitting Petitioner to remain at liberty for nearly three years, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody.

And had Petitioner had been released on humanitarian parole, "it is illogical to suggest that his re-detention is governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *See Rafibaev v. Noem*, 2026 WL 607559, at *2 (D. Colo. Mar. 4, 2026) (internal quotation marks omitted). Even

5

if the Court assumed Petitioner was subject to mandatory detention upon termination of his parole, "Respondents must still comply with the requirements of due process." *E-D-S-O- v. Hernandez*, 2026 WL 1067036, at \*3 (W.D. Wash. Apr. 20, 2026).

### C.    Petitioner's procedural due process rights have been violated.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.,* 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)).

"The [INA] establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the Government to use when removing certain noncitizens from the United States and, in some cases, detaining them."). The Government does not develop a fulsome argument in

response to Petitioner's procedural due process Fifth Amendment claim and instead encourages the Court to rest its decision on the statutory interpretation question and that Petitioner is in removal proceedings. *See* Doc. 13, at 4-12.[5]

This Court analyzes Petitioner's due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

---

[5]      Respondents also challenge the Court's jurisdiction "to prospectively dictate the procedures or outcome of immigration custody determination hearings." Doc. 13, at 12-13. Respondents appear to be referring to the possibility of the Court shifting the burden to the Government in future custody determination hearings for Petitioner. *Id.* Here, the undersigned recommends Petitioner's release, so the issue of burden-shifting is not before the Court. Nonetheless, should the Court determine a bond hearing is the appropriate remedy, the undersigned recommends that, given Petitioner's prolonged detention under the incorrect statute, the Court should find that it is more appropriate for the government to bear the burden of proof in this context. *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). "Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Under these circumstances, the Government ought to bear the burden of proving that Petitioner poses a danger to the community or a risk of flight such that he should remain in detention. The clear and convincing standard that generally "applies to civil detention where liberty is at stake" is appropriate here as well. *See L.G.*, 744 F. Supp. 3d at 1186 (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987); and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979)).

In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

As noted above, Petitioner has "a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey*, 408 U.S. at 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty

8

that [the Due Process] Clause protects"). Respondents deprived Petitioner of his protected status when they placed him in custody.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending nearly three years here. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in release grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he was arrested and received no hearing. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to

detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without a determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the [G]overnment's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not deemed necessary for nearly three years.

### D.   Remedy.

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course,

release." *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243.

The undersigned recommends that Petitioner's continuing due process violation requires his immediate release subject to the same conditions of his earlier release. This view is shared by numerous courts across the country, including courts in this Circuit.[6]

## IV.   Recommendation and notice of right to object.

---

[6]   *See Ewere v. Cerna,* No. CIV-26-320-SLP, 2026 WL 1207088, at *1-2 (W.D. Okla. May 4, 2026) (ordering Petitioner's "immediate release" for due process violation and denial of a bond hearing); *Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026) (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition and **order his immediate release. The undersigned also recommends that the Court order the Government to certify compliance by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to Counsel for the Warden of the Cimarron Correctional Facility. Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker where the government bears the burden of proving, by clear and convincing evidence that Petitioner is a flight risk and a danger to the community.[7]

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by May 25, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[8]

---

[7]    To the extent that Petitioner may be entitled to EAJA fees and costs as a prevailing party, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention").

[8]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to three days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484

The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 20th day of May, 2026.


SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

13